**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHARLES KIMLER** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:20-cv-175-HSO-JCG** |
| | § | |
| **UNITED STATES OF AMERICA;** | § | **DEFENDANTS** |
| **JOHN DOES A – Z** | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
UNITED STATES OF AMERICA'S MOTION [27] TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

BEFORE THE COURT is Defendant United States of America's Motion [27]

to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).   After due

consideration of the Motion [27], the record, and relevant legal authority, the Court

finds that Defendant's Motion [27] should be granted, and that this case should be

dismissed without prejudice for lack of subject-matter jurisdiction.

## I.   BACKGROUND

### A.   Factual background

This is a negligence action brought pursuant to the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 2671-80. Plaintiff Charles Kimler ("Kimler" or "Plaintiff")

initiated suit against Defendant United States of America ("the United States" or

"the Government") seeking damages for injuries he allegedly sustained at the

Veterans Affairs Medical Center ("VAMC") in Biloxi, Mississippi, on May 7, 2019,

while visiting for an appointment with his primary care physician.   Compl. [1] at 2.

Plaintiff claims that when he entered the elevator on the third floor and pressed the

"down" button, the elevator "dropped suddenly" to the first floor, causing him "severe injuries."   *Id.*

The United States Department of Veterans Affairs ("VA") owns and operates the Gulf Coast Veterans Health Care System ("HCS"), and the VAMC is HCS's main facility in the area.   Mem. [28] at 2.   The VAMC, in compliance with VA regulations concerning the solicitation of facility service contracts, awarded a contract for preventative maintenance of its elevators to Elevated Technologies, Incorporated ("Elevated Technologies), with a start date of April 1, 2018.   Ex. 1 [27-1] at 1.   The VA is currently exercising its third option year with Elevated Technologies under this contract.   Mem. [28] at 4.

The contract states that Elevated Technologies will provide "full maintenance services, which includes regular and systematic inspections, of all elevators and dumbwaiters, and any other services necessary to accomplish elevator maintenance and inspections."   Ex. 1 [27-1] at 9.   In addition, "[d]uring inspection visits, the Contractor shall clean, adjust and lubricate the equipment . . ., determine the nature and extent of any trouble, and maintenance required to restore the elevators to safe and satisfactory service, and if conditions warrant, furnish and install parts[.]"   *Id.* at 5.   The contract requires Elevated Technologies to provide a written report to the VA Engineering Office of services performed and to maintain records "of all call backs and repairs . . . including any difficulty experiences and the corrective measures taken to eliminate these difficulties."   *Id.* at 8.   Finally, "any negligence of the Government, its officers, agents, servants, and employees, shall

2

not be the responsibility of the contractor hereunder with the [sic] regard to any claims, loss, damage, injury, and liability resulting therefrom." *Id.* at 29.

The United States' Rule 30(b)(6) witness and contracting officer for the service contract, Brandon O'Neal, testified that Elevated Technologies is not required to seek authorization to make needed repairs, but rather inspects the elevators weekly and provides him with service tickets for completed repairs. *See* Ex. 2 [27-2] at 2, 7. If a needed repair falls outside the scope of the service contract, the VA "generally [has] always just hired [Elevated Technologies] to do those repairs." *Id.* at 5. Elevated Technologies subcontracted "a large portion" of its service contract with the VAMC to Diversified Elevators, which is located in Biloxi, Mississippi. *Id.* at 1-2. The VA does not ever "put hands on the elevator for repair," as all repairs are "100 percent" handled by Diversified under the service contract. *Id.* at 3.

When any work is being performed on an elevator, VAMC protocol is that the elevator is taken out of service "as a safety precaution" and is not placed back in service until the issue is resolved. *Id.* at 8. O'Neal testified that generally, Diversified Elevators will contact the VAMC to inform it that the elevator is being taken out of service, but Diversified Elevators "has the ability to take [the elevator] out [of service] on their own if they feel it's necessary." *Id.* When an elevator is taken out of service, the VAMC's standard procedure is to post signage or place cones to inform the public that the elevator is not currently in service. *Id.* at 11. The elevator mechanic also has the authority and ability to disable the elevator

doors from opening to prevent any individual from entering the elevator. *Id.* at 11-12.

B.   Procedural history

Plaintiff initiated this suit on May 21, 2020, advancing three causes of action. First, he alleges that the United States was negligent, grossly negligent, and/or reckless "in one or more of the following respects:"

a. Failure of Defendants to exercise reasonable care to keep the premises in a reasonably safe condition;
b. Failure to warn Plaintiff of dangerous conditions not readily apparent to Plaintiff, but which Defendant knew or should have known in the exercise of reasonable care;
c. Failure to properly maintain the area before allowing its patrons to enter;
d. Failure to properly post warnings;
e. Failure to provide proper maintenance of its elevators; and
f. Other acts or omissions that will be shown at the trial of this cause.

Compl. [1] at 3.   Plaintiff advances a second negligence claim, alleging that the United States "owed a duty to the Plaintiff to keep the premises in a reasonably safe condition and to warn of dangerous conditions which were not readily apparent to Plaintiff."   *Id.* at 4.   Lastly, Plaintiff alleges that the United States demonstrated "active and passive negligence [in its] disregard for [his] safety," in the following respects:

a. The Defendant was aware of the faulty condition of the elevator and failed to remediate same.
b. Failure of the Defendants to warn the Plaintiff of the dangerous condition of the elevator.
c. Failure of the Defendants to take the subject elevator out of service until same was fixed.
d. Defendant's [sic] created a dangerous condition by its misuse and failure to maintain the subject elevator.

e.  Failure to warn Plaintiff of a dangerous condition not readily apparent to Plaintiff, but which Defendant knew or should have known any existence of reasonable care.

f.  Failure to properly maintain the elevator in question.

g.  Failure to properly post warnings.

h.  Failure to provide proper maintenance to the elevator and

i.  Any acts or omissions will be shown at trial of this cause.

j.  As [sic] such acts or omissions by Defendants where [sic] a direct and proximate cause of Plaintiff's fall in question and a direct and proximate cause of the injuries to the Plaintiff.

*Id.* at 5-6.

The Government has filed the present Motion [27] seeking dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1), arguing that the FTCA's independent contractor exception jurisdictionally bars Plaintiff's claims because "the care and maintenance of the elevators" at VAMC "is the responsibility of an independent contractor rather than the United States."   Mem. [28] at 2.   The Government asserts that it has delegated all services related to the maintenance and inspection of the VAMC's elevators to its contractor, Elevated Technologies. *Id.* at 10.   The contract requires Elevated Technologies to submit reports to the Government, but its "role in and review of actions that the contractor has taken" does not amount to day-to-day oversight sufficient to render Elevated Technologies an "employee" of the United States and render the independent contractor exception inapplicable.   *Id.* at 8-10 (citing *Robbins v. Computer Sciences Corp.*, 486 F. Supp. 2d 581, 585 (S.D. Miss. 2007)).   The Government maintains that the Complaint "is premised upon the acts or omissions of the independent contractor, not the United States, and is, therefore, not valid under the FTCA."   *Id.* at 10.

Plaintiff responds that the independent contractor exception is a "red herring" because "[t]he separate acts and omissions of the employees of the Department of Veterans Affairs, of the Engineering Department, Engineering Safety Department and Patient Safety Department give rise to liability under Mississippi premises liability law and there is no dispute that individuals within these departments are employees of the United States for purposes of the FTCA." Resp. [32] at 11.   Plaintiff relies upon three items in the record to support this contention. First, Plaintiff points to the deposition of Darla Grabert, a safety specialist employed by the VA Patient Safety Department, in which she testified that she responded to a call regarding Plaintiff's injuries on May 7, 2019.   *See* Ex. D [31-4] at 4.   Grabert was informed by various VA "Ambassadors" that several patients during the week prior had reported the elevator "stopping hard" and that the malfunction had been "reported to engineering."   *Id.* at 7-8.

Plaintiff also points to the Affidavit of Charles Cagle, a volunteer VA Ambassador, which states that Cagle was volunteering at the VAMC on May 7, 2019, and the elevator in which Plaintiff was allegedly injured "had a history of malfunctions."   Ex. E [31-5] at 1.   According to the Affidavit, when the elevator is lowered to the ground floor, it "drops about 2 to 3 feet very quickly and comes to a sudden stop," and that "the VA has worked to repair the elevator many times and the same malfunction continues to happen."   *Id.*   Cagle further states that he had previously "been on the elevator when it malfunctioned, and [he] immediately reported the malfunction to maintenance repeatedly." *Id.*

6

Lastly, Plaintiff relies upon the United States' Rule 30(b)(6) deposition, in which O'Neal testified that the elevator in question was serviced on April 22, 2019, and "was operating properly until May 7th."   Resp. [32] at 8 (quoting Ex. A [31-1] at 78).   Plaintiff contends that this indicates that "[d]espite there being multiple reports of issues with the elevator in question . . ., there [were] no service tickets issued from April 23, 2019 . . . to May 7, 2019."   *Id.* (citing Ex. A [31-1] at 78). Plaintiff asserts that the "VA was in sole possession of . . . critical safety information and failed to properly communicate regarding the dangerous condition within its departments or to the elevator contractors; failed to take the elevator out of service . . .; and failed to provide any sort of warning . . . which would have protected the Plaintiff and prevented his injury."   *Id.* at 9.

Plaintiff contends that "[t]he analysis for subject matter jurisdiction based on actionable conduct of VA employees never gets to conduct of the contractors for elevator maintenance" because "[t]here was actionable conduct and omissions by VA employees which created a dangerous condition[.]"   *Id.* at 13.   Plaintiff further argues that the Government retained responsibility for premises safety and ultimate control over the elevators, despite contracting with Elevated Technologies for routine maintenance because two internal VA departments, Engineering Safety Department and Patient Safety, were "involved in safety of patient-utilized elevators" and the contract between Elevated Technologies and the VA "does not contemplate delegation of safety protocols or procedures."   *Id.* at 14-16 (citing Ex. 1 [27-1]). According to Plaintiff, the "only pertinent provision to safety" in the contract

"expressly states that the United States . . . shall remain liable for those actions and omissions of its own agents and employees."   *Id.*

The Government counters in its Reply [34] that it delegated the "role of elevator safety" to its contractor because "[t]he standard procedure of adhering to safety guidelines falls under the directive of the Contract in instructing the contractor to conform to the latest" safety codes and standard practices.   *Id.* at 3. It contends that Plaintiff's arguments regarding premises liability arising under Mississippi law are premature because the FTCA independent contractor exception serves as a threshold jurisdictional bar.   *Id.* at 5 (citing *Robbins*, 486 F. Supp. 2d at 587).   The Government also disputes the verifiability of Plaintiff's alleged previous reports of elevator malfunctions, pointing to O'Neal's deposition in which he testified that no reports or complaints of sudden stops were ever reported to the Engineering Department. *Id.* (citing Ex. 2 [27-2] at 13). The Government further contends that Cagle's affidavit is ambiguous and that, because he is now deceased, he is unavailable for further questioning.   *Id.*   Lastly, the Government notes that Grabert stated during her deposition that she did not have any firsthand knowledge of the reports about elevator malfunctions and her statements refer only to what she was told by a third party.   *Id.*

The Government argues in the alternative that the discretionary function exception to the FTCA bars Plaintiff's claims because the decision to hire an independent contractor is "precisely the type of decision that the . . . exception is designed to shield from liability."   *Id.* at 4 n.3 (quoting *Williams v. United States*,

50 F.3d 299, 310 (4th Cir. 2009)). According to the Government, inspection of the elevators and the posting of warning signs are decisions that fall within the decision to hire an independent contractor and, by delegating safety responsibilities to a contractor, the Government made a policy determination that qualifies as a discretionary function. *Id.* (citing *United States v. Varig Airlines*, 467 U.S. 797, 820 (1984)).

## II. DISCUSSION

A. Relevant legal authority

A motion to dismiss pursuant to Rule 12(b)(1) challenges a federal court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In resolving a motion to dismiss for lack of subject-matter jurisdiction,

> [i]t is well settled in this circuit that the district court . . . has the power to dismiss on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party invoking the Court's jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In determining whether sovereign immunity applies, a court accepts as true the plaintiff's "non-conclusory allegations." *Wooten v. Roach*, 964 F.3d 395, 402 (5th Cir. 2020).

The United States is immune from suit unless it has waived its sovereign immunity and consented to be sued. *See United States v. Sherwood*, 312 U.S. 584,

586 (1941); *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017).   Through the FTCA, Congress enacted a limited waiver of sovereign immunity, which "provides the sole basis of recovery for tort claims against the United States." *Gonzalez*, 851 F.3d at 543 (quotation omitted).

The FTCA's waiver of sovereign immunity "is subject to several exceptions." *Id.* (quotation omitted).   The United States Supreme Court has held that, "[s]ince the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions . . . to such waiver."   *United States v. Orleans*, 425 U.S. 807, 814 (1976).   While "[s]tatutes waiving sovereign immunity of the United States are to be construed strictly in favor of the sovereign," *Angulo v. Brown*, 978 F.3d 942, 953 (5th Cir. 2020) (quotation omitted), the United States Court of Appeals for the Fifth Circuit has instructed that it "do[es] not construe exceptions to the FTCA in favor of any particular party." *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020).   The exceptions relevant here are the independent contractor and discretionary function exceptions.

B.    Independent contractor exception

Although the Government has consented to be sued under the FTCA for claims of "personal injury or death arising or resulting from the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment," 28 U.S.C. § 2679(b)(1) (emphasis added), this consent does not extend to the acts of independent contractors, *see id.*; *see also Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993).   "Therefore, if the act

was not committed by an 'employee of the Government,' then the court must dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

The FTCA defines an "employee of the government" to include "officers or employees of any federal agency." 28 U.S.C. § 2671. "Federal agency" is defined as

> the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but this definition does not include any contractor with the United States.

*Id.*

The "critical element" in determining whether an agency or individual is a contractor or was acting as an employee of the Government is the Government's authority "to control the detailed physical performance of the contractor." *Logue v. United States*, 412 U.S. 521, 528 (1973); *see also Linkous*, 142 F.3d at 275. Whether the contractor receives federal funding or whether it is required to comply with federal standards is not determinative of whether the contractor was acting as a Governmental employee. *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir. 1979). Rather, where the Government exerts day-to-day control over the operations of the contractor, it "is deemed an agency of the federal government and the United States is liable under the FTCA for injuries caused by negligence of the independent contractor's employees." *Id.* (citing *Orleans*, 425 U.S. at 815). The Government's retention of the right to inspect progress, to provide advice on

11

contract provision, and to order work stopped for safety violations is not sufficient to impute liability to the United States. *Id.* at 831; *see also, e.g., Guile v. United States*, 422 F.3d 221, 230 n.10 (5th Cir. 2005) ("A retained right of inspection does not defeat the independent contractor exception unless the government actually supervises the contractor's day-to-day activities.").

In *Robbins v. Computer Sciences Corporation*, this Court found that a company contracted to provide preventative and corrective maintenance of facilities, including elevators, was an independent contractor and not an employee of the Government for purposes of the FTCA. 486 F. Supp. 2d 581, 586 (S.D. Miss. 2007). Plaintiffs asserted that the Government was advised of operational failures of an elevator that closed unexpectedly on one of the plaintiffs, that it failed to perform necessary repairs, and that it did not warn users of the condition of the elevator. *Id.* The Court determined that, because one clause in the contract that required approval of repairs by the Government did not apply to the elevators, and because of the contract's performance-based nature, the plaintiffs had failed to demonstrate that the Government retained day-to-day control over the contractor. *Id.* The Court further concluded that because the independent contractor exception to the FTCA's waiver of sovereign immunity applied, it could not reach the question of the Government's liability under Mississippi premises liability law. *Id.* at 587 (citing 28 U.S.C. § 2671).

Here, Plaintiff contends that because he has alleged that Government's employees, and not the independent contractors who service the VAMC elevators,

were negligent and caused his injuries, the independent contractor exception is not a jurisdictional bar to his claims.   Resp. [32] at 16.   He notes that the contract with Elevated Technologies explicitly states that it will not be liable for the negligence of Government officers, agents, servants and employees.   *Id.* (quoting Ex. 1 [27-1] at 28-29).   However, this contractual clause does not, by itself, render the independent contractor exception inapplicable, because the contract serves to delegate the Government's responsibility for elevator maintenance and repair to the contractor. The contractor is specifically responsible for "full maintenance which includes regular and systematic inspection of each of the elevators and dumbwaiters . . . ." Ex. 1 [27-1] at 5. During each inspection the contractor must "clean, adjust, and lubricate the equipment as specified below, determine the nature and extent of any trouble, and maintenance required to restore the elevators to safe and satisfactory service, and if conditions warrant, furnish and install parts listed below." *Id*.

Plaintiff contends that the Government did not delegate its duties under Mississippi premises liability law to maintain a safe environment, warn about dangers, and prevent injury.   However, as this Court found in *Robbins*, the FTCA and related exceptions operate as a jurisdictional threshold that a plaintiff must first cross before the Court may conduct any substantive analysis of potential liability under state law.   In this case, the Government contracted with Elevated Technologies to maintain and service the VAMC elevators, and both Elevated Technologies and Diversified Elevators were vested with the authority to place

13

elevators in or take them out of service, and to place signage indicating whether an elevator was out of service.   Such authority lies at the heart of what Plaintiff's Complaint asserts was the negligent conduct in this case.   Moreover, nowhere does the Complaint name any specific Government employees whom the Plaintiff alleges were responsible for accomplishing such actions, referring only generally to the Government's duty to maintain the elevators.   *See* Compl. [1] at 3-6. Plaintiff has not identified any of the Government employees to whom issues with the elevator were allegedly reported nor has he submitted any evidence regarding what, if anything, such employees did with this information. This lends credence to O'Neal's testimony that no such reports were made to the VA's Engineering Department. Ex. 1 [34-1] at 18.

Although the contract with Elevated Technologies reserved to the Government authority to oversee maintenance of the elevators by way of weekly reports or as-needed communication with Government employees, this does not rise to the level of the Government exercising control of the day-to-day operations of the contractor so as to render Elevated Technologies or Diversified Elevators employees of the VA.   As the Fifth Circuit concluded in *Alexander*, the Government's retention of the right to inspect progress, to provide advice, and to order work stopped for safety violations is not sufficient to impute liability to the Government.   *Alexander*, 605 F.2d at 831.   Likewise, "[a] retained right of inspection does not defeat the independent contractor exception unless the government actually supervises the

contractor's day-to-day activities."   *Guile*, 422 F.3d at 230 n.10.   There is no indication that such supervision occurred here.

The Government's Rule 30(b)(6) witness testified that both Elevated Technologies and Diversified Elevators handled servicing of the elevators at the VAMC, and that the VA does not ever "put hands on the elevator for repair," as all repairs are "100 percent" handled by Diversified under the service contract.   Ex. 2 [27-2] at 3.   He added that, generally, Diversified Elevators would contact the VAMC to inform it that the elevator was being taken out of service, but that it had "the ability to take [the elevator] out [of service] on their [sic] own if they feel it's necessary."   *Id.*   The elevator mechanic also had the authority and ability to disable the elevator doors from opening to prevent individuals from entering the elevator.   *Id.* at 11-12.   Based upon the Complaint supplemented by the undisputed facts and the Court's resolution of any disputed facts, the Court finds that Plaintiff's claims are premised upon acts or omissions of the independent contractor, not Government employees.   For this reason, the independent contractor exception of the FTCA applies, and this Court lacks jurisdiction to hear Plaintiff's claims.

C.     Discretionary function exception

The discretionary function exception "preserves the federal government's immunity . . . when an employee's acts involve the exercise of judgment or choice." *Gonzalez*, 851 F.3d at 543.   This exception preserves the Government's immunity from

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The Supreme Court has articulated a two-part test for determining whether agency conduct qualifies as a discretionary function: (1) the conduct must be discretionary in nature; and (2) the judgment exercised must be "of the kind that the discretionary function exception was designed to shield." *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 323 (5th Cir. 2009) (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).  If either one of these conditions is not satisfied, "the discretionary function exception fails to protect the United States from suit." *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020).

Under the first step, acts that are "discretionary in nature," or "involve an element of judgment or choice," are covered by the exception.  *Gaubert*, 499 U.S. at 322.  It is the nature of the conduct, rather than the status of the actor, that governs whether the exception applies.  *Id.*  This requirement is not satisfied where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  "In other words, the discretionary function exception does not apply if the

16

challenged actions in fact violated a federal statute, regulation, or policy." *Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018).   According to the Fifth Circuit, "[i]f a plaintiff can point to a specific, nondiscretionary function or duty that prescribes a specific course of action for an agency or employee, then there is no discretion." *Joiner*, 955 F.3d at 404 (quotation omitted).

The second consideration is whether the Government's decision as to the appropriate action was based on considerations of public policy.   *See Gonzalez*, 851 F.3d at 550.   The discretionary function exception is intended to "prevent judicial second-guessing of legislative and administrative decisions," and thus protects "only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 537).   "Decisions that are susceptible to legislative or administrative considerations are the type of judgments that fall within the [scope of the] discretionary function exception . . . ." *M.D.C.G.*, 956 F.3d at 772.   A decision based on considerations of social, economic, or political public policy satisfies the second prong of the discretionary function exception test. *See Gonzalez*, 851 F.3d at 551.   "The second part of the inquiry asks not whether the decision maker in fact engaged in a policy analysis when reaching his decision but instead whether his decision was susceptible to policy analysis."   *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Louisiana Plaintiffs)*, 713 F.3d 807, 810 (5th Cir. 2013) (quotation omitted).

In *United States v. Varig Airlines*, the Supreme Court held that "[w]hen an agency determines the extent to which it will supervise the safety procedures of

17

private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Varig*, 467 U.S. at 819-20.   The Fifth Circuit has held that "[s]upervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function."   *Guile*, 422 F.3d at 231; *see Doe v. United States*, 831 F.3d 309, 319 (5th Cir. 2016) (same).   Other courts in this Circuit have likewise concluded that overseeing an independent contractor "represent[s] precisely the species of choices the discretionary function exception was intended to protect."   *Jimenez v. United States*, No. SA-20-CV-00575-XR, 2021 WL 860008, at *11 (W.D. Tex. Mar. 5, 2021); *see, e.g.*, *Walding v. United States*, 955 F. Supp. 2d 759, 782 (W.D. Tex. 2013).

Plaintiff alleges generally that the Government was negligent for failing to maintain a safe premises and failing to warn the public of an unsafe condition. The allegedly negligent conduct in this case implicates the VA's retention of an independent contractor to provide maintenance and repair to the VAMC elevators and the associated decisions regarding inspecting the elevators, making necessary repairs, and posting appropriate signage.   *See* Compl. [1] at 3-6.

Turning to the first prong of the discretionary function analysis, Plaintiff has failed to identify a nondiscretionary duty violated by an agency or employee of the United States.   *See Joiner*, 955 F.3d at 404.   Plaintiff has not pointed the Court to any federal statute or regulation mandating any particular decisions or how such decisions should be made.   Simply put, "there was room for choice in making the allegedly negligent decision to not inspect and maintain the [elevators] in a certain

way." *Gonzalez*, 851 F.3d at 547 (quotation omitted).   Because there was no mandatory policy that either directed or prescribed a course of action to be taken by Government employees in this case, and because their alleged conduct involved elements of choice, the actions or omissions at issue qualify as discretionary in nature.   *See, e.g., M.D.C.G.*, 956 F.3d at 772.

Secondly, the decisions involving overseeing the independent contractor in this case, and the considerations involving whether and the extent to which to supervise the work of an independent contractor are the "most basic kind" of actions the discretionary function exception was intended to cover.   *Varig*, 467 U.S. at 819-20; *see also Guile*, 422 F.3d at 231; *Jimenez*, 2021 WL 860008, at *11; *Walding*, 955 F. Supp. 2d at 782.   Even if the contractors were somehow found to be Government employees, the Fifth Circuit has held that federal employees' supervision of subordinates and an agency's supervision of its employees involve the kinds of judgment that the discretionary function exception was designed to protect, as they involve balancing management interests to effectively carry out the governmental mission.   *See M.D.C.G.*, 956 F.3d at 772.

Likewise, decisions concerning how the Government inspects and maintains elevators are susceptible to policy considerations, such that they are of the type the discretionary function exception was intended to shield.   *See Gonzalez*, 851 F.3d at 547 (concerning inspection and maintenance of bicycle trails in a national forest); *see also In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Louisiana Plaintiffs),* 713 F.3d at 810 (addressing the decision of what would provide the safest, most

feasible, convenient, and readily available housing assistance following a hurricane). To find otherwise in this case would constitute judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, which is contrary to the discretionary function exception.   *See Gaubert*, 499 U.S. at 322.

In sum, the Government's conduct in this case was discretionary in nature, and the judgment it exercised was of the kind that the discretionary function exception was designed to shield.[1]   *See id.* at 315; *St. Tammany Par., ex rel. Davis*, 556 F.3d at 323.   The discretionary function exception applies as an alternative bar to Plaintiff's claims against the Government, and the Motion [27] to Dismiss should be granted.

### III.   CONCLUSION

To the extent the Court has not specifically addressed the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant United States of America's Motion [27] to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED**.

---

[1] While Plaintiff's Response focuses upon the Government's purported negligence under Mississippi law, *see* Mem. [32] at 11-16, the FTCA is clear that the discretionary function exception applies "whether or not the discretion involved be abused," 28 U.S.C. § 2680(a). Arguments concerning some breach of duty "better inform the merits of [Plaintiff's] underlying claims, rather than whether the discretionary function exception applies." *Gonzalez*, 851 F.3d at 547.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Charles Kimler's claims against Defendant United States of America are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.   A separate Final Judgment will issue in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 19th day of August, 2021.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

21